UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
FLORIDA

Case No. 03-61107-CIV-ZLOCH/SELTZER

STEVEN I. WEISSMAN (as custodian under
the Florida Uniform Transfers To Minors Act,
as trustee and individually),

   Plaintiff,
vs.

THE NATIONAL ASSOCIATION
OF SECURITIES DEALERS, INC.,
(A Delaware not for profit corporation), and
THE NASDAQ STOCK MARKET, INC.,
(A Delaware corporation organized for profit),

   Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NASD'S MOTION TO DISMISS THE COMPLAINT

Plaintiff responds to the Motion To Dismiss filed by Defendant, The National Association Of Securities Dealers, Inc. ("NASD") and shows: [1]

### I. Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all

---

[1] Plaintiff previously filed a similar complaint which was dismissed by this Court, sua sponte, without prejudice. Case No 02-61500-Civ-Zloch. The sole basis for dismisssal was the technical defect in Plaintiff's allegation of diversity jurisdiction in that Plaintiff alleged he was a "resident" instead of a "citizen" of Florida; and, did not involve the merits of Plaintiff's causes of action.



the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion v. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994).

## II. The NASD's Immunized Activities As A Regulator Are Not At Issue

The NASD's Motion to Dismiss relies on the undisputed principle that it is absolutely immune from liability for actions taken pursuant to responsibilities imposed on it by the Exchange Act. This undisputed principle is, however, not controlling herein because the Complaint expressly and emphatically states that Plaintiff does not seek to impose any liability upon the NASD for any action relating to its responsibilities as a market regulator, or otherwise, under the Exchange Act (Complaint at Par. 6):

> 6. This action is based solely on the for-profit commercial business activity of the Defendants in touting, advertising, promoting and selling shares of stock in WorldCom, Inc. This activity includes Defendants' approximately $100 million dollar marketing and advertising campaign during the years 2000, 2001 and 2002 to promote and sell, among other companies, the shares of WorldCom, Inc. Plaintiff makes no claim based upon any failure of the Defendants to fulfill any duties as a self regulatory organization under the Exchange Act or otherwise. Likewise, Plaintiff's claims are not based upon any failure of the Defendants to properly regulate any aspects the securities markets, publicly traded companies, or any market participants whatsoever; or, in connection with enforcement of its rules and the performance of its regulatory or adjudicatory responsibilities or functions.

The NASD's commercial business activity, including the running of a (*id.*) "$100 million dollar marketing and advertising campaign during the years 2000, 2001 and 2002 to promote and sell, among other companies, the shares of WorldCom, Inc.," has no relationship whatsoever to its responsibilities as a market regulator under the Exchange Act.

It is well established that the NASD is not immune from liability for any private, non-regulatory business activity, which is the sole basis of Plaintiff's allegations. See, *Sparta Surgical Corp. v. Nasd, Inc.*, 159 F.3d 1209, 1214 (9th Cir., 1998), stating:

> "To be sure, self-regulatory organizations do not enjoy complete immunity from suits; it is only when they are acting under the aegis of the Exchange Act's delegated authority that they so qualify. **When conducting private business, they remain subject to liability.**"

Every case relied on by the NASD deals with its performance of quasi governmental functions, as a proxy for the SEC, when operating in the capacity of a not-for-profit self regulatory organization ("SRO"). None of these cases, nor any legal principal, cloaks the NASD's commercial business activity with the immunity it enjoys when engaged in enforcement of its rules and the performance of its regulatory responsibilities. The NASD's advertising, stock promotion and sales activity, which is the sole basis for liability asserted by Plaintiff, is no more protected by immunity than if Defendant were operating a Burger King, a bar, a carnival, or a boiler-room sales operation. See, *Austin Mun. Sec., Inc. v. NASD, Inc.* 757 F. 2d 676, 691-2 (5th Cir. 1985):

> The NASD performs myriads of activities in which it and its officers play no adjudicatory role. These include general administrative functions and the operation of the Nasdaq automated quotations system used in the over-the-counter securituies market. **Defendants lack immunity for these activities.**" [Empasis added.]

No question of immunity arises in this cause because no regulatory or adjudicatory functions of the NASD are at issue.

The NASD's assertion that the Complaint attempts to state an action for breach of its statutory role, mirrors the same poorly conceived strategy it adopted in *Shapira v. NASD, Inc. et. al.*, 187 F.Supp.2d 188, 191-192 (S.D. New York, 2002):

> "The NASD's contention that there is no private cause of action against it for performance of its statutory role, which is correct, is beside the point. The cases upon which it relies all stand for the proposition that there is no implied private right of action *under federal law*. But plaintiff does not claim that there is. Rather, he sues the NASD on a common law tort theory. The absence of an implied federal cause of action therefore is immaterial."

Only by mischaracterizing and twisting Plaintiff's allegations, does the NASD seek to apply the immunity defense to Plaintiff's tort claims as if they relate to the performance of <u>its regulatory or adjudicatory functions</u>. Thus, the NASD blatently manufactures the following assertions, which are directly contrary to the clear factual allegations actually stated in the Complaint (NASD Memorandum at pages 2, 7-8 and 10):

*Page 2*

> "Mr. Weissman's complaint, with respect to NASD, does nothing more than allege negligent regulation of NASDAQ, thereby preventing WorldCom's fraud from being detected and the company's securities delisted before plaintiff could purchase them. * * * Plaintiff seeks to impose subsantial monetary liability on NASD for actions taken or omitted within its role as a securities regulator."

*Pages 7-8*

> "Plaintiff basically alleges that if NASD had done a better regulatory job overseeing NASDAQ, then NASDAQ would have uncovered Worldcom's fraud . . . In essence, plaintiff alleges that NASD failed to prevent a fraudulent act committed by WorldCom. Although thinly veiled as state law claims, in Counts III and IV (the only counts naming NASD), Weissman seeks to impose liability upon NASD for negligent regulation."

*Page 10*

> "Weissman's claims against NASD arise directly from NASD's enforcement of its rules and performance of its regulatory responsibilities . . . The claims for "common law fraud" and 'negligent misrepresentation'

squarely implicate NASD in its role as securites regulator under the Exchange Act."

The NASD fails to back up the foregoing assertions with any citations to allegations actually contained within the Complaint. [2]

The NASD is correct that the Complaint includes a number of references to its functions and duty to regulate the market and protect investors under the Exchange Act. However, Plaintiff seeks no relief based on any failure of the NASD to fullfill these duties. The descriptions of the NASD's official duties under the Exchange Act are merely context and background; first, to make it crystal clear that those duties do not include touting, promoting, advertising and selling shares of WorldCom, the sole alleged basis of its liability; and, second, to explain the confidence Plaintiff placed in the NASD and that his reliance on its false advertisements promoting WorldCom, *inter alia,* as a great company with accounting in accordance with "GAAP," was reasonable.

The NASD is also correct that the Complaint includes a discussion of WorldCom's failure to satisfy the NASDAQ listing requirement of an independent audit committee. However, Plaintiff seeks absolutely no relief based on the NASD's failure to de-list WorldCom. Whether to de-list is a regulatory decision for which the NASD correctly asserts it is immune from civil liability. As expressly stated in the Complaint, this discussion of WorldCom's failure to satisfy the NASDAQ listing requirement is included merely to show that the NASD

---

[2] Compare the NASD's assertions with the actual allegations at paragraph 6 of the Complaint, quoted at page 2 *supra*:

> "Plaintiff makes no claim based upon any failure of the Defendants to fulfill any duties as a self regulatory organization under the Exchange Act or otherwise. Likewise, Plaintiff's claims are not based upon any failure of the Defendants to properly regulate any aspects the securities markets, publicly traded companies, or any market participants whatsoever; or, in connection with enforcement of its rules and the performance of its regulatory or adjudicatory responsibilities or functions."

negligently or intentionally touted, advertised and promoted WorldCom as a great company when it knew, or should have known, otherwise (Complaint at par. 46):

> "46. . . .The following allegations regarding WorldCom's failure to comply with the new requirements for audit committees of companies listed on the Nasdaq are included solely to demonstrate that the Defendants knew, or should have known, that their private, commercial advertisements and marketing efforts touting that company as a good investment were false and misleading and that it should not, as part of these marketing efforts, have disseminated WorldCom's fraudulent financial statements."

Had the NASD not elected to flagrantly engage in the non-regulatory commercial business activity of promoting, marketing, and touting WorldCom as a good investment, it would have no liability to Plaintiff. In its 2002 report, the Management Committee of The For Profit NASDAQ declared (par. 40 of Complaint):

> ". . . the most important measure of Nasdaq performance is the increase in long-term stockholder value, attained through operating income, revenue growth and market share."

As with any for-profit business, the goal of the Defendant's $100 million dollar advertising campaign was to generate "operating income, revenue growth and market share." The NASD's CEO, Frank Zarb, succinctly explained the transformation of the NASDAQ (Complaint at page 10, note 3):

> "It went from a quasi-governmental entity a few years back, [to something that is] now dynamic and entrepreneurial."

There is no immunity from civil liability afforded to "entrepreneurial" enterprises.

Finally, although the Complaint sets forth a detailed discussion of the transfer of the NASDAQ stock market from the not for profit NASD to The For Profit, Plaintiff does not assert any liability based on the structure or fact of the transformation.[3] Rather, this discussion is

---

[3] While the reorganization/recapitalization of the NASDAQ market was approved by the SEC, the advertisements, promoting and touting WorldCom, were neither approved nor authorized by the SEC.

included and necessary to show the direct profit interest and motive of the NASD and its controlling persons in promoting, touting and selling shares of WorldCom; as well as the fact that it was acting in concert with The For Profit NASDAQ.

In conclusion, the plainly alleged basis of the NASD's liability is solely the false, fraudulent, massive, multimedia promotional campaign to sell WorldCom shares, which is not connected, in any manner, to the NASD's immunized duties as a market regulator.

### III. Common Law Fraud

The NASD accurately recites the essential elements of common law fraud (NASD Memorandum at page 15):

> "(a) a false representation of fact, known by the party making it to be false at the time it was made; (b) that the representation was made for the purpose of inducing another to act in reliance on it; (c) actual reliance on the representation; and (d) resulting damage to the plaintiff."

However, in arguing that Plaintiff has failed to allege these elements, the NASD simply ignores the allegations contained in the Complaint.

**(a)   The Defendants Acted In Concert. Therefore, the NASD Is Treated As If It Engaged In All Promotional Activities Done In The Name Of The For Profit NASDAQ.**

It is axiomatic that when defendants act in concert with each other, the actions of one defendant are considered the actions of all (West's Florida Practice Series, Chapter 7, Part II, *Theories of Liability*, § 7.4):

> "The concert of action theory was adopted from the English common law by Florida courts. Under this concept, joint and several liability applied when the defendants acted in concert with the act of one being considered the act of all. Each was therefore, liable for the entire loss suffered by the injured party." [Footnotes ommitted.] [4]

---

[4] The "concert of action" theorty of liability has been expanded to include joint tortfeasors. Thus, defendants whose separate independent acts combine to cause an injury, may be jointly and severally liable even where they are not acting in concert. See, *Smith v. Department of Insurance*, 507

7

The law applicable to defendants acting in concert is also stated in the Restatement of Law 2nd Torts, Chap. 44, §876, *Persons Acting In Concert*:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself..."

Finally, see *Thompson v. Johnson*, 180 F. 2d 431, 433-434 (CA-5, 1950): "... on the theory that the act of one is the act of all, the rule of joint and several liability of tort feasors prevails where the tort feasors act in concert or unity of action..."

The Complaint, *sub judice*, alleges the fraudulent advertisements and dissemination of WorldCom's fraudulent financial statements, done overtly by The For Profit NASDAQ, was controlled and directed, in fact and in law, by the NASD; and, that the NASD undertook this activity jointly and in concert with the The For Profit NASDAQ. Accordingly, under the concert of action principle discussed above, the NASD is treated as if it placed the fraudulent advertisements and disseminated WorldCom's fraudulent financial statements. The allegations that the NASD controlled, directed and acted in concert with The For Profit NASDAQ, include the following:

> 24. Since July 9, 2000, **The For Profit** has been operating The Nasdaq Stock Market, subject to its agreement with the **NASD**.

---

So. 2d 1080, 1091 (Fla. 1987):

> "Originally, joint and several liability applied when the defendants acted in concert, the act of one being the act of all, and each was therefore liable for the entire loss sustained by plaintiff. The doctrine was later expanded by eliminating the requirement that the parties act in concert . . . when separate independent acts of negligence combined to produce a single injury."

25. **The For Profit** is not registered as a securities association under the Securities Exchange Act of 1934, which is required in order to operate any stock market. To avoid violation of the Act, the July 9, 2000 Plan of Allocation and Delegation Agreement states that actions taken by **The For Profit** are subject to review and ratification by the **NASD**, which is the duly 'registered securities association':

> 'Actions taken pursuant to delegated authority, however, remain subject to **review, ratification or rejection** by the NASD Board in accordance with procedures established by the Board . . .'

26. Because the Nasdaq was controlled by the **NASD**, the SEC found **The For Profit** exempt from the obligation to register as an exchange. . .

28. As of the date filing hereof, **The For Profit** continues to operate the Nasdaq market without SEC registration as an exchange, under the control of the **NASD**.

33. During 2002 (while continuing to retain voting control through a voting trust), the **NASD** reduced its ownership of **The For Profit's** common stock to zero by, *inter alia*, selling 43.2 million shares of **The For Profit** back to **The For Profit** for $440 million of cash and preferred stock.

60. . . . Pursuant to the Plan of Allocation and Delegation of Function Agreement, the **NASD**, at all times material to this action, controlled **The For Profit's** "allocation of resources" including its marketing and advertising expenditures.

65. During the period July 9, 2000 through May 2002, **The For Profit** (controlled by the **NASD**, *supra*) and its major listed companies, including Worldcom, operated pursuant to a cooperative joint venture or **partnership** to promote the sale of Nasdaq stocks in general and the major companies shares in particular.

94. . . . At all times material to this action, operation of the Nasdaq stock market, including the advertising and marketing campaign, was jointly controlled and run by the Defendants.

95. During 2000 and 2001, **The For Profit** and **NASD**, jointly and in concert with each other, expended $74 million dollars on marketing and advertising. In 2002, **The For Profit** expended an additional $27 million dollars on marketing and advertising. The purpose of this marketing and advertising campaign was to induce investors, including Plaintiff, to purchase shares of stock traded on the Nasdaq stock market, including WorldCom, in order to benefit the **NASD** and **The For Profit** (as well as

>   the officers and directors of the Defendants who held stock and stock options in **The For Profit**) by:
>
>   >   (i)   generating increased trading volume and the attendant revenue;
>   >
>   >   (ii)  generating and retaining listing income from Nasdaq listed companies, including WorldCom; and,
>   >
>   >   (iii) increasing the value of **The For Profit's** stock.
>
>   97. . . . The intention of **The For Profit** and **NASD** in making these false representations and concealing their direct profit motive and interest in selling the stock of that company, was to convince and induce investors, including Plaintiff, to purchase shares of WorldCom.
>
>   98. In their advertising and marketing campaign, **The For Profit** and **NASD,** acting jointly and in concert with each other, purposely concealed and withheld disclosure of their profit motive and financial stake in generating sales of WorldCom shares, and of their joint venture with WorldCom to market said shares, with the intention of misleading potential investors, including Plaintiff, into believing the endorsements were being made by of a disinterested self regulatory organization whose goal was investor protection and market integrity.

The Complaint clearly alleges the Defendants acted in concert. Therefore, for purposes of consideration of a motion to dismiss, the activity of one Defendant must also be treated as the act of the other.

>   (b)   Each Of The Four Essential Elements Of Common Law Fraud Is Alleged.

The four essential elements of common law fraud are set forth below, followed by the primary paragraphs of Count III (Common Law Fraud), satisfying each element:

>   (i) *A false representation of fact, known by the party making it to be false at the time it was made*; and
>
>   (ii) *That the representation was made for the purpose of inducing another to act in reliance on it*:
>
>   >   96. As part of the advertising and marketing campaign described in paragraph 95 above, **The For Profit** published numerous print and television advertisements in Florida which knowingly, with intent to deceive, endorsed WorldCom and conveyed the false representation and

impression that WorldCom was a great company with accounting in accordance with GAAP; a good investment; and, that WorldCom met the listing requirements of the Nasdaq stock market. **The For Profit** also provided publicity to WorldCom on its web-site and assisted in the dissemination of WorldCom's fraudulent financial statements. The aforesaid advertising and marketing campaign conducted during the year prior to Plaintiff's purchases of WorldCom shares included, but was not limited to:

(i) As set forth in its April 30, 2001 registration statement filed with the SEC:

"**Nasdaq's branding strategy** is designed to convey to the public that the world's innovative, **successful growth companies** are listed on Nasdaq."

(ii) Appearing in major prime time programming such as West Wing and MSNBC News with Brian Williams, **The For Profit** ran TV spots for its 100 Index Trust, better known as the QQQ. These TV ads began running the week of September 24, 2001. The ads feature a group of companies included in the trust, including WorldCom. The key message is that the world's most sought after companies can be found on the world's most sought after security.

(iii) Seeking to calm the markets in the wake of the Enron fraud, on April 11, 2002, **The For Profit** took out a two full page spread advertisement in the Wall Street Journal discussing its belief in the need for Nasdaq listed companies to provide accurate financial reporting in accordance with Generally Accepted Accounting Principals, "supported by a Knowledgeable Audit Committee". On one page is a picture of the Nasdaq ticker with the slogan "**The Responsibilities We All Share**". On the opposite page under the headline "**Keeping Our Markets True - It Is All About Character**" is a list of the chief executives of the "good" Nasdaq listed companies under the sub-heading "**Our Beliefs Stand In Good Company**". Listed thereunder as an endorser of these Nasdaq goals is "Bernard J. Ebbers, President and Chief Executive Officer WorldCom, Inc." The message conveyed by the ad is that WorldCom and its CEO are endorsed by **The For Profit** as, *inter alia*, having good character, accounting done in accordance with GAAP, and a viable audit committee in accordance with Nasdaq listing requirements.

(iv) Linking the Nasdaq website to WorldCom's fraudulent financial statements with the specific intent to create the impression that they were reviewed and/or endorsed by **The For Profit.**

  (v) Generally conveying the false impression that WorldCom was in compliance with Nasdaq listing requirements.

 In addition to the foregoing, during the months prior to his purchases of WorldCom shares, Plaintiff saw, heard and relied upon other public media advertisements/communications by the Defendants conveying the same false representations and impression to the effect that WorldCom was a great company with accounting in accordance with GAAP; a good investment; and, that it met the listing requirements of the Nasdaq stock market. Plaintiff requires discovery to recall and provide further specification as to the dates and places and method of publication of said additional advertisements/communications during the time periods leading to Plaintiff's purchases of WorldCom shares.

  97. **The For Profit** and **NASD's** advertising and marketing campaign was designed and intended by Defendants to induce investors, including Plaintiff, to purchase shares of WorldCom and, as part of that campaign, Defendants knowingly and intentionally made false laudatory representations regarding WorldCom while concealing their direct profit motive and interest in generating purchases of WorldCom shares. The intention of **The For Profit** and **NASD** in making these false representations and concealing their direct profit motive and interest in selling the stock of that company, was to convince and induce investors, including Plaintiff, to purchase shares of WorldCom.

  98. In their advertising and marketing campaign, **The For Profit and NASD,** acting jointly and in concert with each other, purposely concealed and withheld disclosure of their profit motive and financial stake in generating sales of WorldCom shares, and of their joint venture with WorldCom to market said shares, with the intention of misleading potential investors, including Plaintiff, into believing the endorsements were being made by a disinterested self regulatory organization whose goal was investor protection and market integrity. In order to effectuate their plan to mislead potential investors, including Plaintiff, the Defendants willfully published numerous advertisements and distributed WorldCom's financial statements in violation of Florida Statute § 517.301(1)(b), which requires disclosure in advertisements and marketing material that Defendants were in a joint venture with WorldCom to promote the sale of its shares and were compensated and/or reimbursed, *inter alia*, from the trading volume the marketing and advertising generated, listing and other fees. The intention of **The For Profit** and **NASD** in so misleading potential investors, including Plaintiff, was to convince and induce investors, including Plaintiff, to purchase shares of WorldCom.

 **(iii)** *Actual reliance on the representation*; **and**

 **(iv)** *Resulting damage to the plaintiff*:

99. In purchasing all of his shares of WorldCom (listed at par. 10, *supra*), Plaintiff relied upon the aforesaid false and misleading representations in the Defendants' advertising and marketing campaign; and, as a result, was induced to and did purchase said shares of stock and has suffered substantial damages as a result thereof.

(c) <u>Plaintiff Has Satisfied The Rule 9(b) Pleading Standard For Alleging Fraud.</u>

The NASD contends that Plaintiff fails to plead fraud with the particularity required by Rule 9(b), which states: "In all averments of fraud . . . the circumstances shall be stated with particularity." The only authority relied on by the NASD is *Sands Point Partners, L.P. v. Pediatrix Medical Group, Inc.*, Case No. 99-6181 CIV-ZLOCH 2000 U.S. Dist. LEXIS 22349 (S.D. Fla., January 19, 2000). In *Sands Point*, this Court dismissed a class action complaint seeking relief for alleged violations of Federal securities laws (Rule 10b-5), on the basis that it failed to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act ("the PSLRA"). The Court found the complaint totally inadequate in that the few allegations pled with particularity did not implicate the defendants in securities fraud. In *Sands Point*, the complaint was dismissed on the ground that it failed to comply with the PSLRA's pleading standards, which are more stringent than Rule 9(b). As noted in *SEC v. Ginsberg, et al.*, 2000 WL 1299020, Case No. 99-8694C-IV-Ryskamp (S.D. Fla., January 10, 2000), note 1:

> "In December 1995, Congress enacted the . . . PSLRA . . . which heightens the pleading requirements for Rule 10b-5 claims. **The Act goes further than Rule 9(b) . . .**" [Emphasis added.]

The NASD's reliance on *Sands Point* is misplaced because (i) the PSLRA is not applicable to the common law fraud claim *sub judice*; and (ii) as explained below, Plaintiff has pled fraud with the particularity required by Rule 9(b).

The oft repeated standard for pleading fraud under Rule 9(b) was stated in *Amerifirst Bank v. Boman, et al.*, 757 F. Supp. 1365, 1381 (S.D. Fla., 1991):

> "Rule 9(b), as applied in this jurisdiction, requires a plaintiff to allege fraud with sufficient particularity to permit 'the person charged with fraud . . .[to] have a reasonable opportunity to answer the complaint and adequate information to frame a response.' *In re U.S. Oil and Gas Litigation*, 1988 WL 28544, 1988 U.S. Lexis 2217, at 4 (S.D. Fla., 1988). The allegations must be accompanied by 'some delineation of the underlying acts and transactions which are asserted to constitute fraud.' *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Del Valle*, 528 F. Supp. 147, 149 (S.D. Fla. 1981)."

Also see the formulation as stated in stated in *Arral Industries, Inc. v. Touch Entertainment, Inc.*, 2000 WL 141269 (S.D. Fla. 2000) Case No. 99-0916-CIV- Highsmith:

> "Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened standard of pleading upon claims alleging fraud or mistake . . . This standard, however, 'does not require detailed fact pleading of claims of fraud.'. . . Rather, Rule 9(b) must be read in conjunction with Rule 8's notice pleading regime. . .The purpose behind Rule 9(b)'s specificity requirement 'is to eliminate fraud actions in which all of the facts are learned through discovery after the complaint is filed.' . . . Thus, Rule 9(b) is satisfied when the complaint 'alleges fraud with sufficient particularity to permit the person charged with fraud . . .[to] have a reasonable opportunity to answer the complaint and adequate information to frame a response.'" [Numerous citations of authority omitted.]

Finally, as noted in *SEC v. Ginsberg, et al.*, 2000 WL 1299020, Case No. 99-8694C-IV-Ryskamp (S.D. Fla., January 10, 2000):

> ". . .the Eleventh Circuit has cautioned that 'Rule 9(b) must not be read to abrogate Rule 8 . . ., and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading.' *Friedlander v. Nims*, 755 F. 2d 810, 813 n. 3 (11th Cir. 1985)."

With the pertinent 9(b) standard as a guide, Plaintiff addresses the particularized allegations of fraud contained within the Complaint; to wit: The Defendants touted, marketed, advertised and promoted WorldCom to Plaintiff, falsely representing, with intent to decieve, that it was a great company and worthwhile investment with accounting in accordance with GAAP. The Defendants also disseminated WorldCom's fraudulent financial statements and represented, with intent to decieve, that they believed they were accurate. The Defendants also willfully

created the false impression through their advertising and promotional activity that WorldCom met the requirements for listing on the NAASDAQ when, in fact, they knew it did not.[5]

The following paragraphs of the Complaint flesh out the who, what, where and when of these fraudulent representations, with particularity:

(i) Par. 56. "Knowing that WorldCom failed to meet the audit committee rules, **The For Profit** continued to advertise, promote and tout WorldCom as a great company, and to disseminate its fraudulent financial statements, implicitly warranting and falsely representing that WorldCom satisfied all listing requirements."

(ii) Par. 61. Beginning the week of September 24, 2001, the Defendants ran numerous television spots in major prime time programming such as West Wing and MSNBC News with Brian Williams. These spots falsely advertised WorldCom as a "successful growth company" when they they knew it was not.

(iii) Par. 62. On April 11, 2002, the Defendants took out a two page spread advertisement in the Wall Street Journal intentionally conveying the false message that WorldCom and its CEO were endorsed by the Defendants "as, inter alia, having good character, accounting done in accordance with GAAP, and a viable audit committee in accordance with NASDAQ listing requirements."

(iv). Pars. 66-67, 70, 71. During the period July 9, 2000 through May 2002, the Defendants conspired with WorldCom and entered into a partnership with that company to promote WorldCom by lending WorldCom the Defendants' imprimatur as the market regulator.

---

[5] Plaintiff is stunned by the NASD's admission at page 5 of its Memorandum that, as early as the year 2000, WorldCom was not even qualified to be listed on the NASDAQ exchange:

> "Similarly, in 2000 and 2001, well before Plaintiff made most of his purchases, WorldCom itself filed information with the SEC that disclosed WorldCom's failure to meet the independent audit committee requirement and therefore NASDAQ listing standards."

As part of this partnership, the Defendants linked WorldCom's fraudulent financial statements to The For Profit's website and concealed their partnership arrangement in order to tout WorldCom shares with the intention to mislead investors.

> "70. **The For Profit** willfully failed to reveal the fact that it did not independently review the fraudulent WorldCom financial information and statements linked to and posted on its Nasdaq web-site; and, to the contrary, **The For Profit** represented that it believed the information to be accurate and reliable:
>
> > 'All information contained herein is obtained by NASDAQ from sources believed by NASDAQ to be accurate and reliable.'
>
> 71. . . .**The For Profit** and **NASD** had a financial stake in promoting shares of WorldCom and intentionally conveyed the false impression to Plaintiff that the financial information provided on the official Nasdaq site was reviewed by them in their official capacities."

As alleged throughout the Complaint, in purchasing WorldCom shares, Plaintiff saw and relied on the TV spots, the Wall Street Journal advertisement and the fraudulent financial statements disseminated by Defendants with their endorsement. Plaintiff also relied on the Defendants' false representation on The For Profit NASDAQ's website that they believed the WorldCom financial information was from a reliable source. Plaintiff was also intentionally misled by the Defendants' willfull concealment in advertisements of their direct profit interest in promoting and selling WorldCom shares, which concealment is a crime under Florida law. Paragraphs 96-99, within Count III (Common Law Fraud), summarize these particularized allegations of fraud.

It is also noted that the Complaint alleges the Defendants profited from their fraud:

<u>Par. 12 (iii).</u> "Defendants directly and indirectly profited from the sale of WorldCom shares to Plaintiff . . ."

<u>Par. 43.</u> "Since the bulk of **The For Profit's** income is derived from the listing and volume of Nasdaq traded securities, its officers and directors have a strong personal incentive to promote and sell Nasdaq traded securities."

<u>Par. 95.</u>  "... The purpose of this marketing and advertising campaign was to ... benefit the **NASD** and **The For Profit** (as well as the officers and directors of the Defendants who held stock and stock options in **The For Profit**) by:

    (i)   generating increased trading volume and the attendant revenue;

    (ii)  generating and retaining listing income from Nasdaq listed companies, including WorldCom; and,

    (iii) increasing the value of **The For Profit's** stock."

<u>Par. 98.</u>  "... Defendants were in a joint venture with WorldCom to promote the sale of its shares and were compensated and/or reimbursed, *inter alia*, from the trading volume the marketing and advertising generated, listing and other fees."

In conclusion, the allegations which delineate the underlying acts of fraud are of sufficient particularity to satisfy the pleading requirement of Rule 9(b). The allegations clearly spell out the who, what, where and when of the fraudulent representations with particularity; and, afford the Defendants adequate information to frame a response and a reasonable opportunity to answer the Complaint. Accordingly, Plaintiff respectfully submits that the pleading requirements of Rule 9(b) are satisfied.

## IV.  <u>Negligent Misrepresentation</u>

Count IV, negligent misrepresentation, is based on essentially the same allegations as the fraud count, except; Plaintiff alleges the false statements and misleading information were made by the Defendants negligently, rather than knowingly or intentionally. As explained above, since the Complaint alleges the Defendants were acting jointly and in concert, the negligent misrepresentations facially made through an advertising and promotional campaign carried out in the name of the For Profit NASDAQ, are treated as if also made by the NASD. Under the concert of action principle, joint and several liability applies when the defendants act in concert, with the act of one being considered the act of all. *Supra.* Also, the heightened pleading

reqirement of Rule 9(b), applicable to Count III (Fraud), is inapplicable in a review of Count IV, Negligent Misrepresentation.

Plaintiff does not take issue with the elements of a suit for negligent misrepresentation set forth by the NASD. Page 18 of NASD Memorandum. The allegations of Count IV satisfy each element; to wit: (i) Defendants, acting in concert, made misrepresentrations of material facts; (ii) the NASD, acting in concert with The For Profit NASDAQ, either knew of the misrepresentations or made them under circumstatnces in which it ought to have known of their fasity; (iii) the NASD, acting in concert with The For Profit NASDAQ, intended that the misrepresentations induce Plaintiff to act on them; and (iv) Plaintiff justifiably relied on the misrepresentations and was thus injured.

In urging dismissal, the NASD inappropriatly argues issues of fact. Thus, while Plaintiff has alleged that the advertising campaign promoted and touted WorldCom, which was sold by the Defendants, the NASD contests these allegations asserting (NASD Memorandum at page 19):

> "NASD never 'sold' WorldCom . . . WorldCom, along with other companies listed on NASDAQ, was simply included in some advertisements for NASDAQ."

Finally, at page 19, note 9 of its Memorandum, the NASD cites several cases for the proposition that there is no duty owed by an exchange to customers who trade through the facilities. These cases have no relevance because Plaintiff does not seek to impose liability based on any actions by the NASD in operating the Exchange. None of the cited cases involve private business activity of advertising, promoting, touting and selling securities in a business venture completly unrelated to operating an exchange or serving as a market regulator.

**Wherefore,** Plaintiff prays that the NASD's Motion To Dismiss be denied.

Case No. 03-61107-CIV-ZLOCH/SELTZER

*[signature]*

Steven I. Weissman, Esq.
Steven I. Weissman, P.A.
Attorney for Plaintiff
10762 Denver Drive
Cooper City, FL 33026
Telephone/fax: 954-704-9050
E-mail: W1152@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered to Federal Express for next business day delivery to: David S. Mandel, Esq., MANDEL & MCALILEY LLP, Suite 1200, 169 East Flagler Street, Miami, Florida 33131; and to Betty G. Brooks, Esq., NASD, 1735 K Street, NW, Washington, DC 2006-1500, this 10th day of July, 2003.

*[signature]*

Steven I. Weissman, Esq.
Steven I. Weissman, P.A.
Attorney for Plaintiff
10762 Denver Drive
Cooper City, FL 33026
Telephone/fax: 954-704-9050
E-mail: W1152@aol.com